Okay, our next case for today, case number 7, is United States v. Clifford Reed, 2030-54, and we should have, yes, we do have Ms. Gambino and Mr. Applebly Better Chargy. So, Ms. Gambino, you may proceed. Good morning, Your Honors, Judge Wood, Judge Brennan, and Judge Mannion. It's my privilege to be here on behalf of Mr. Reed. The sole issue before the Court this morning is whether the District Court erred in denying Mr. Reed's objection to the drug quantity calculation, because that calculation was based on the unconstitutionally vague statutory and guideline requirement that quantity include mixtures or substances that may also not be controlled substances. I'm having a little trouble hearing you. I'm not sure whether it's your proximity to the microphone or what, but it's not very loud. I think I've got my volume all the way up. Go ahead. Is this better, Your Honor? Can you hear me better now? It's still a bit quiet. Okay. How about this? That's better, yeah. A little better, yeah. Okay, I will keep my voice up. So, basically, Your Honors, we're asking you to revisit the Supreme Court decision and this Court's decision in Chapman, in which the carrier for a controlled substance was found to include the controlled substance. So, Ms. Gambino, let me just ask you the painfully obvious question. Clearly, it is not up to this Court to reconsider Chapman. Now, if you're arguing that there is some room under the Chapman framework for different treatment of heroin that is mixed with other substances than was given to LSD or other things, you know, we can hear that. Or, alternatively, if you are raising this argument to preserve it for future Supreme Court action, that's a totally legitimate move to make. You know, we are bound by Chapman until the Supreme Court tells us otherwise. So, I just need you to tell me whether you see some room under Chapman for us to come out differently or whether you're really just preserving an argument. Your Honor, I do see some room for you to come out differently under Chapman and I also wish to preserve the argument. So, it's a both-and situation. And the room comes in because neither Chapman nor Neal addressed the issue of what happens when the carrier is significantly more weighty than the substance. So, because both Chapman and Neal addressed LSD and LSD on blotters as opposed to, for instance, sugar cubes, the Court left open what would happen when the weight of the carrier outweighed the weight of the substance. And that's what we have here in Mr. Reed's case with heroin, fentanyl, and carfentanil. The expert did some calculations that were not disputed in the District Court, which found that although the total net weight of the mixture was 996.7 grams, the heroin was 3.3 percent of that, the fentanyl 0.082 percent of that, and the carfentanil 0.077 percent of that, which roughly converts to 32.89 grams of heroin, 0.817 grams of fentanyl, and 0.767 grams of carfentanil. So, what happens in a case like this where the actual substance is a very small part of the weight is that you have the absurd or inequitable situation in which the total weight is used and results in a guideline range of 151 to 188 months, whereas if the substance weight was used, it would be 37 to 46 months. And the reason why... Could I ask you, Ms. Gambino, another way to look at this, or at least a factor that seems for example, even though it might have been 0.767 grams, what do they call it? Elephant tranquilizer. It's very, very strong, much more so than heroin, even more so than fentanyl. And so, when we have language that says, mixture containing, or words to that effect, isn't that precisely what we're trying to get at? That some things actually almost have to be before you can distribute them? Well, Your Honor, that is a fair point. However, it results in the absurd situation that you might have a mixture or substance that was, say, 50% carfentanil or 75% fentanyl, and the person would be treated the same as the person who had the 0.08 grams or 0.07 grams. Are you sure the person would be treated the same? I'm just thinking in this world of guideline sentencing, if somebody had, let's just round it up and call it a kilo or a shade less than a kilo, and it was 50% carfentanil, I would bet at a sentencing hearing, the judge would say, well, that's obviously going to be cut much more. That number grossly understates what this defendant was going to do, and I'm going to take that into account. So, I'm not sure that your hypothesis of equivalency is accurate. Your Honor, while a judge could do that, we're still at a very great distance from the that are produced by saying that, for instance, you have to have 100 grams of carfentanil to get it to the 10-year mandatory minimum and 400 grams of the fentanyl when all you actually have is less than a gram. So, the distance or the distinction is simply too great, and there's while there is a way, on the one hand, to say, as you pointed out, if he had 50% carfentanil, you could increase the guidelines. In this particular case, where it's so much less, and there might be a desire to mitigate that, you can't take it under the mandatory minimum because of the way the inert substance is included in the quantity. So, there's always a way to aggravate, but there isn't a way to mitigate. Because Congress decided to create, I mean, it wasn't, it's not our fault, you know, Congress decided to establish a mandatory minimum. That's correct, Your Honor. Of course, it's not your fault, but the judiciary has taken an important leading role in changing the drug laws. For instance, this court's dissent, which was in Justice Marshall and Chapman, led eventually to Congress changing, or the Sentencing Commission, rather, changing the LSD calculations to limit them. And similarly, when you see that it was the court that led with Kimbrough and Booker with the crack cocaine disparity before Congress then passed the first, the Fair Sentencing Act in 2010 and the First Step Act in 2018. So, and similarly, you know, you do have precedent for treating actual and inert substances differently in the methamphetamine statute, where you can look at purity or you can look at the actual amount. So, what we would like to see is this court taking the lead as it did in Chapman to point out the inequity that results from considering the entirety of the inert substance along with the measurement of quantity and point the way for Congress to make the changes and to make the as-applied change in this particular case for Mr. Reed. And I see my time is cutting into my rebuttal time. Unless the court has questions, I'd like to reserve my remaining minute. That's fine. Thank you. Mr. Appleby-Battacargi. Good morning, and may it please the court. Suresh Appleby-Battacargi for the United States. The district court sentenced defendant Clifford Reed to 10 years imprisonment, which is the lowest possible sentence the defendant could have received for his offense here, distributing a 996-gram brick of drugs containing detectable amounts of carfentanil, fentanyl, and heroin. The defendant asked for a lower sentence based on the relative purity of the drugs, and the district court rejected that request, relying principally upon the decision in Chapman. This was not error. Chapman, which affirmed this court's en banc decision in Marshall, recognized that Congress made a deliberate choice in 1986 when it amended the drug sentencing laws. That choice involved replacing the purity-based approach that advocates here in favor of the current law, which specifies graduated penalties based on the street weight of drugs, regardless of their purity. And Chapman concluded that this was a rational sentencing scheme. Looking at the record here, the district court found that Chapman was controlling and correctly ruled that Chapman foreclosed not only the defendant's due process challenge, but also his request for a sentence below the mandatory minimum of 10 years' imprisonment. I'd like to address two points that defendants' counsel raised at oral argument today. First, the allegation that Chapman leaves room for his position today. And to counter that, I would quote the Supreme Court's decision at Chapman at pages 459 to 60, when the court observed, quote, Congress clearly intended the dilutant, cutting agent, or carrier medium to be included in the weight of drugs like heroin and cocaine for sentencing purposes. Inactive ingredients are combined with pure heroin or cocaine. The mixture is then sold to consumers as a heavily diluted form of the drug. And in some cases, the concentration of the drug in the mixture is very low, end quote. So although Chapman concerned LSD, the court interpreting the 1986 Drug Act spoke specifically to the legislative history concerning drugs such as heroin, which is at issue here. And it is similar to drugs such as fentanyl and carfentanil, which are also at issue here. Second, it's the government's position that defendants' reliance on subsequent changes to the law, based on the crack cocaine disparity amendments, the First Step Act of 2018, and so forth, are misplaced for one critical reason. Regardless of the changes that Congress has made to the drug sentencing statute since 1986, one thing it has never changed is the mixture and substance formulation in the drug statutes. That was the plain language of the statute in 1986. It was the plain language of the statute in 1991 when Chapman was decided. It remains the plain language of the statute today. And so, to the extent defendant wishes to preserve this issue for further appellate review, that is, of course, his right. But at this point, Chapman remains the law. The district court did not err in relying upon Chapman to reject defendants' objections to the PSR, his objection to the drug quantity, or his request for a below-mandatory minimum sentence. Because the district court committed no error, Chapman below should be affirmed. Unless the court has any specific questions, I will submit on that. All right. Thank you very much. Anything further, Ms. Gambino? Yes, Your Honor. To point out that this court in 2005 said, this is in response to the second point raised by my learning counsel, that even if the language is plain, which the Supreme Court has found is not plain, it is ambiguous, over and over again that language has been found to be arbitrary and ambiguous. And Turcotte found that even if the language is plain, arbitrary or discriminatory enforcement is not required. So even if the court were to find that the language is plain, I would suggest that the result still calls for examination in this particular case because of the vast difference between what happens to people who are not similarly situated under the particular requirements of the law. And with respect to the quote from Chapman regarding heroin, it did not address fentanyl and carfentanil. And even within the context of this case, while Mr. Reed would have been exposed to a five-year mandatory for the amount of heroin, it was the 10-year mandatory for the very tiny amounts of carfentanil and fentanyl that controlled. And so this contributes to the argument that you can't, you can have somebody who's in substantially worse or more culpable who gets the same sentence as Mr. Reed because there's no way of mitigating for someone in his position who has very little of the drug in fact. So we would ask you to reverse and remand. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.